# ATTACHMENT #1

*Redacted Dkt. No. 2*

# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| IN RE: APPLICATION OF THE UNITED STATES OF AMERICA FOR ORDER AUTHORIZING INSTALLATION AND USE OF PEN REGISTER/TRAP AND TRACE DEVICE ON EMAIL ACCOUNT | **UNDER SEAL**<br><br>No. 1:23-ec-1941<br>No. 1:24-ec-311<br>No. 1:24-ec-873<br>No. 1:24-ec-1291<br>No. 1:24-ec-1696 |
| --- | --- |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO MODIFY NONDISCLOSURE ORDERS
## ISSUED PURSUANT TO 18 U.S.C. § 3123(d)

Apple Inc. ("Apple") is seeking judicial relief from multiple nondisclosure orders ("NDOs") of arbitrary and exceedingly long periods that improperly restrict Apple's First Amendment rights. The United States Attorney's Office for the Eastern District of Virginia has repeatedly sought and obtained five-year "gag" orders preventing Apple from informing its customer—who is believed to be a senior staffer to a member of the House of Representatives— that the Department of Justice ("DOJ" or the "Department") has seized non-content information about the customer's account pursuant to a pen trap/trace device ("PRTT"), 18 U.S.C. § 3123(d). The transparency and regular judicial oversight afforded by the temporally shorter NDOs that Apple seeks are critical here, both to protect Apple's First Amendment rights and because of the important separation of powers questions implicated by the target of the investigation.

Not only did the government seek lengthy NDOs that fail to meet strict scrutiny, but each time the government sought a new order, it reset the five-year clock and thus the end date for the period of nondisclosure. At present, the gag orders extend until August 2029. Additionally, in this same matter, the government sought and obtained nondisclosure orders relating to a subpoena and

search warrant that will expire—if not renewed by the Court—in November 2025 and May 2026, respectively, meaning that the government must return to the Court later this year or the user will be notified of the government's investigation. The only possible reason for these rote, five-year requests is that the government cannot be bothered to return to the Court and justify extensions at the end of a shorter—but more narrowly tailored—nondisclosure period.

The law on NDOs is clear. They are content-based restrictions on free speech and constitute prior restraints that must be narrowly tailored to serve a compelling government interest. Exceedingly long and arbitrary five-year NDOs are not narrowly tailored—they are far longer than the 180-day and one-year periods favored by courts and are also in tension with DOJ policy that favors much shorter NDOs under 18 U.S.C. § 2705(b). DOJ policy states that for each NDO "[p]rosecutors must conduct an individual and meaningful assessment regarding the need for protection from disclosure,"[1] that includes a "case- and fact-specific analysis." As the investigation progresses, "prosecutors should carefully consider whether such orders remain warranted, and, if so, for how long."[2] In this case, where there are NDOs in place for multiple types of process—i.e., subpoena, search warrant, and PRTT—there is no justification for the PRTT gag orders to last even one day—let alone more than three years—beyond the nondisclosure period of the subpoena and search warrant.

For these reasons, Apple respectfully moves the Court to modify its orders dated December 15, 2023; February 12, 2024; April 10, 2024; June 7, 2024; and August 6, 2024, issued pursuant to 18 U.S.C. § 3123(d), to amend the period of nondisclosure for each order to end no later than

---

[1] U.S. Dep't of Just., *Policy Regarding Applications for Protective Orders Pursuant to 18 U.S.C. § 2705(b)*, at 1, 2 n.3 (Oct. 19, 2017) (hereinafter "Rosenstein Memo").

[2] U.S. Dep't of Just., *Supplemental Policy Regarding Applications for Protective Orders Pursuant to 18 U.S.C. § 2705(b)*, at 2 (May 27, 2022) (hereinafter "Monaco Memo").

one year from the date the order was issued, or alternatively, that the Court align the nondisclosure period for the Nondisclosure Orders with the date of the nondisclosure period for the grand jury subpoena. Apple also respectfully requests a hearing on this motion.

## BACKGROUND

Apple is one of the world's largest designers, manufacturers, and marketers of consumer electronics, software, and related services. Core to Apple's business ethos is providing products and services with industry-leading privacy, data protection, and transparency features.[3] Apple is committed to upholding its core values by maintaining transparency with the public and by communicating openly with its customers about the security of its products and services and the privacy protections Apple provides for customer information. Apple also respects that law enforcement plays a critical role in keeping our society safe and complies with valid legal process ordering it to disclose customer information to the government in accordance with its Customer Privacy Policy and its Legal Process Guidelines.[4]

Each year, Apple responds to thousands of law enforcement requests. In the United States alone, Apple received almost 18,000 requests for information related to its customers in the first half of 2023.[5] Absent a valid court order, and with limited exceptions, Apple's policy is to notify customers when their Apple account information is sought in response to legal process. Because Apple and other providers seek to notify customers of law enforcement requests for customer

---

[3] APPLE, *Privacy*, https://www.apple.com/privacy/ (last accessed March 6, 2025) ("Privacy is a fundamental human right. It's also one of our core values. Which is why we design our products and services to protect it. That's the kind of innovation we believe in.").

[4] *See generally,* APPLE, *Legal Process Guidelines,* published June 2024, https://www.apple.com/legal/privacy/law-enforcement-guidelines-us.pdf.

[5] APPLE, *Transparency Report – United States of America, Government Requests January - June 2023,* https://www.apple.com/legal/transparency/us.html (last accessed March 6, 2025)

information, law enforcement routinely requests that courts exercise statutory authority to restrain providers from providing such notice to customers through NDOs.

On December 15, 2023, Apple received a PRTT order requiring the production of information for the Apple customer account of ███████████████████. Ex. A, Dec. 15, 2023 PRTT Order. Pursuant to this PRTT, Apple provided the required customer information. Over the next nine months, Apple received and responded to four additional PRTTs for the same account (collectively, the "Subject PRTTs"). Exs. B through E. In each order, the government sought, and the Court approved, a five-year period of nondisclosure starting on the date of each respective order, effectively making the nondisclosure period from December 15, 2023 to August 6, 2029 (2,061 days, or five years, seven months, and 22 days) (collectively, the "PRTT NDOs"). Apple objected to the five-year nondisclosure period, and the government initially agreed to modify the period of nondisclosure to one year, but after further discussion and subsequent negotiation with counsel, the government ultimately declined to reduce the period of court-ordered nondisclosure.

In connection with these discussions, Apple learned that the Apple customer whose information the government sought and obtained pursuant to the PRTTs is likely a senior congressional staffer.[6] Additionally, Apple learned that on November 8, 2023—one month before the first PRTT—the government served a subpoena directing Apple to provide account information for the same congressional staffer. Ex. G. That subpoena included an NDO issued pursuant to 18 U.S.C. § 2705(b) preventing Apple from disclosing the existence of the legal process for only

---

[6] Apple believes the customer is ████████████████
████████████████████████████████████████
████████████████████████████████████████ (last accessed March 5, 2025).

two years, expiring on November 9, 2025. *Id.* Similarly, on May 7, 2024, the government served Apple with a search warrant for the same congressional staffer's Apple account. Ex. H. Along with that warrant, the government also sought and obtained an NDO issued pursuant to § 2705(b) directing Apple not to disclose the existence of the search warrant for two years, expiring on May 7, 2026. Ex. I.

## APPLICABLE LAW

Electronic service providers, such as Apple, have a First Amendment right to communicate to the public generally, and with their customers specifically, about court orders for customer information. *See Matter of Subpoena 2018R00776*, 947 F.3d 148, 155–56 (3d Cir. 2020) (finding electronic service provider's intent to disclose receipt of a grand jury subpoena to its subscriber is protected speech under the First Amendment and applying strict scrutiny to an NDO); *Microsoft Corp. v. Dep't of Just.*, 233 F. Supp. 3d 887, 900 (W.D. Wa. 2017) ("Section 2705(b) orders that indefinitely prevent Microsoft from speaking about government investigations implicate Microsoft's First Amendment rights."). However, the government may delay notification for a certain period of time by seeking a court order under § 2705(b) (subpoenas and search warrants), § 2703(d) orders, or § 3123(d) (PRTTs).

NDOs implicate two "presumptively unconstitutional" restrictions on speech, namely, prior restraints and content-based restrictions. *In re Sealed Case*, 77 F.4th 815, 829 (D.C. Cir. 2023), *cert. denied sub nom., X Corp. v. U.S.*, No. 23-1264, 2024 WL 4426628 (U.S. Oct. 7, 2024) (applying strict scrutiny without deciding it governs). Because of these restrictions, the Third Circuit and several district courts have found that NDOs are subject to strict scrutiny—the government bears a heavy burden to show the restraint on free speech is narrowly tailored to serve a compelling government interest. *Matter of Subpoena 2018R00776*, 947 F.3d at 155 (finding

NDOs are a content-based restriction where they prevent a service provider from "conveying information" about the existence of the legal process and are a prior restraint by preemptively forbidding the provider from speaking about the process) (citations omitted); *see, e.g., Matter of Search of Info. Associated with Specified E-Mail Accounts*, 468 F. Supp. 3d 556, 560 (E.D.N.Y. 2020), *vacated as moot*, No. 20-3945, Doc. 241 (2d Cir. 2021) (applying strict scrutiny to § 2705(b) NDO); *Matter of Search Warrant for [redacted].com*, 248 F. Supp. 3d 970, 982 (C.D. Cal. 2017) (same); *In re Search Warrant Issued to Google, Inc.*, 269 F. Supp. 3d 1205, 1216 (N.D. Ala. 2017) (same); *In re Sealing and Non-Disclosure of Pen/Trap/2703(d) Orders*, 562 F. Supp. 2d 876, 887, 895 (S.D. Tex. 2008) (applying strict scrutiny to § 2705(b) and § 3123(d) NDOs). Accordingly, "[i]f a less restrictive alternative would serve the Government's purpose, [it] *must* use that alternative" unless it can prove that the "alternative will be ineffective to achieve its goals." *United States v. Playboy Entm't Group, Inc.*, 529 U.S. 803, 813, 816 (2000) (emphasis added).

The strict scrutiny analysis is the same for NDOs issued under § 2705(b) or § 3123(d). *In re Sealing and Non-Disclosure of Pen/Trap/2703(d) Orders*, 562 F. Supp. 2d at 882–83. A PRTT nondisclosure order imposes a prior restraint on speech because of its judicial origin and suppression of speech rather than punishment. *Id.* "Prohibiting a service provider from disclosing the existence of the pen/trap or the investigation means that the first-hand experiences of the recipients of those orders are completely excluded from public debate." *Id.* at 881. Thus, "[j]udicial gag orders impinge upon freedom of speech . . . under the First Amendment, and must pass muster under well-established constitutional case law." *Id.* at 880.

## ARGUMENT

The Court should modify and substantially reduce the five-year NDOs on the Subject PRTTs because they are not narrowly tailored to achieve a compelling governmental interest and

thus fail to satisfy strict scrutiny. The government is unable to show that the five-year NDOs are the least restrictive means available to infringe on Apple's First Amendment right to notify its user. Indeed, the government has already conceded that a two-year NDO is more appropriate for other legal process related to the same investigation, and the government will be required to return to the Court later this year if the government intends to continue to prevent Apple from making any notification to its user. The three extra years of nondisclosure for the five PRTTs therefore serve no compelling investigative purpose, are contrary to DOJ policy on NDOs, do not demonstrate any attempt to narrowly tailor the restrictions, and raise important Separation of Powers issues. In light of these substantial constitutional concerns, more regular judicial scrutiny is required.

## I. The First Amendment Requires a Shorter Nondisclosure Period.

Strict scrutiny requires the government to demonstrate that the PRTT NDOs are narrowly tailored to serve a compelling government interest. *Matter of Subpoena 2018R00776*, 947 F.3d at 155. Given the government has already sought a shorter two-year nondisclosure period for the grand jury subpoena and search warrant, the government cannot meet its heavy burden of showing that a five-year NDO is the least restrictive means necessary to achieve its compelling interest.

Here, the government cannot meet its burden because the five-year NDOs for the PRTTs far exceed the maximum one-year nondisclosure period favored by the courts for NDOs issued pursuant § 2705(b), which account for the bulk of the case law on this subject. *See In re Sealed Case*, 77 F.4th at 831 (180 days), *Matter of Search Warrant for [redacted].com*, 248 F. Supp. 3d at 982 (180 days); *In re Search Warrant Issued to Google, Inc.*, 269 F. Supp. 3d at 1218 (180 days); *In re Sealing and Non-Disclosure of Pen/Trap/2703(d) Orders*, 562 F. Supp. 2d at 877 (180 days); *Matter of Subpoena 2018R00776*, 947 F.3d at 153 (one year) (citing Rosenstein Memo at 2); *In re Grand Jury Subpoena to Google, LLC Dated Mar. 20, 2019*, No. 19 MAG. 2821 (LAP), 2020 WL 13505395, at *2 (S.D.N.Y. Jan. 31, 2020), *vacated as moot*, No. 20-3945, Doc. 241 (2d Cir. 2021)

7

(one year); *Matter of Search of Info. Associated With Specified E-Mail Accounts*, 468 F. Supp. 3d at 563 (one year); *cf. United States v. Warrant*, 2017 WL 3669564, at *5 (finding an indefinite § 2705(b) NDO subject to re-evaluation upon closure of the investigation or upon indictment was narrowly tailored); *In re Application of the U.S. For An Order Pursuant To 18 U.S.C. § 2705(b)*, 131 F. Supp. 3d 1266, 1270 (D. Utah 2015) (finding § 2705(b) permitted an indefinite nondisclosure period).

In addition, in *In re Sealing and Non-Disclosure of Pen/Trap/2703(d) Orders*, the court determined that six months was a reasonable default nondisclosure period for an NDO for a PRTT under § 3123(d) given the "standard duration for a pen/trap order is 60 days." 562 F. Supp. 2d at 895. Six months, the court reasoned, is "short enough to respect the fundamental values at stake, and long enough not to cause an undue burden [on the government]." *Id.* at 887, 895. In recognizing its own important role in protecting "the fundamental values of openness and transparency embodied in the First Amendment and at common law," the court observed that "[w]e are judges of courts, not of chambers, and justice may not be done in a corner." *Id.* at 895. A 180-day NDO for a PRTT would "bring no undue hardship," especially because "[a]dditional extensions [could] be considered, but a correspondingly greater specificity in the [government's] certification [would] be required for each such extension." *Id.*

A nondisclosure order may not continue any longer than is necessary to protect the government's interest. *In re Grand Jury Subpoena Issued to Twitter, Inc.*, 2017 WL 9287146, at *7 (N.D. Tex. 2017); *cf. Doe v. Gonzales*, 500 F. Supp. 2d 379, 422 (S.D.N.Y. 2007), *aff'd in part, rev'd in part sub nom., John Doe, Inc. v. Mukasey*, 549 F.3d 861 (2d Cir. 2008) (finding provision of National Security Letter statute preventing judicial review of nondisclosure requirement for one year was not narrowly tailored because "it may call for the period of non-disclosure to extend

substantially beyond the time that national security necessitates"). In *In re Grand Jury Subpoena Issued to Twitter, Inc.*, the court quashed an indefinite NDO, finding nondisclosure was no longer justified because the government had publicly indicted the target. 2017 WL 9287146, at *7 (N.D. Tex. 2017). There, the court explained the risk that notification may cause a target subscriber or co-conspirators to "change their operating methods," "entice or instigate others to get involved," or otherwise risk the secrecy of grand jury proceedings. *Id.* The investigation may have been compelling when the government first applied for the NDO, the court reasoned, but since the target had been "publicly indicted for some time," an indefinite nondisclosure period was no longer the least restrictive means of achieving the government's interest. *Id.* at *6–7. Further, the court found the government must bear the burden of justifying continued nondisclosure because they are in the best position to know when the need for secrecy is no longer necessary. *Id.* at *7.

Here, the government gave itself a nondisclosure period of 1,825 days—10 times the 180-day period found sufficient by the court in *In re Sealing and Non-Disclosure of Pen/Trap/2703(d) Orders.* 562 F. Supp. 2d at 895. A nondisclosure period shorter than what the government has sought here is clearly not unduly burdensome because the government has already conceded that a two-year nondisclosure period is sufficient. As noted, the government sought and obtained two-year NDOs pursuant to § 2705(b) for other lawful requests for information from the exact same Apple customer in the exact same investigation, including in November 2023 (one month prior to the first PRTT), and in May 2024 (after the government had already obtained three PRTTs with five-year NDOs). The target of the PRTTs at issue will become aware of the investigation when the two-year NDOs expire in November 2025 and May 2026, unless the government applies for, and the court grants, an extension to these NDOs. Once any NDO is permitted to expire, the PRTT NDOs will continue to infringe on Apple's First Amendment rights long after the government no

longer has a compelling interest. The Government may choose to reply that if the matter becomes public, they will then seek to remove the nondisclosure order, but challenges to prior restraints are needed precisely to avoid the ability of the Government to argue mootness.[7]

Because the need for nondisclosure may terminate when the grand jury subpoena NDO expires, it is not an undue burden for the government to provide a particularized justification for nondisclosure of the Subject PRTTs each year, or no later than when the nondisclosure period on the initial grand jury subpoena expires. This is precisely what the court in *In re Grand Jury Subpoena to Google, LLC*, sought from the government. 2020 WL 3637379, at \*4 (E.D.N.Y. June 19, 2020). In that matter, the court rejected an application for a one-year NDO because the government failed to include specific facts such as "the anticipated length of the remainder of the investigation . . . or whether the government anticipates that any events other than the arrest or trial of any remaining targets will obviate the need for continued secrecy." *Id.* Here, the government repeatedly extended the five-year nondisclosure periods for the Subject PRTTs rather than requesting nondisclosure until a date certain. The government's continuous request for a five-year nondisclosure period and the resulting rolling forward of the expiration date appears to be motivated only by administrative convenience. And administrative burden should not determine whether Apple may exercise its First Amendment rights.

In light of the overwhelming precedent, a five-year NDO is plainly not the least restrictive means available to the government.

---

[7] *See, e.g.*, Richard Salgado, *Skirting Judicial Scrutiny by Mooting and Scooting*, LAWFARE (Feb. 26, 2025), https://www.lawfaremedia.org/article/skirting-judicial-scrutiny-by-mooting-and-scooting (last accessed March 6, 2025) (discussing recent examples of DOJ's efforts to moot legal challenges brought by providers and thus avoid judicial scrutiny).

## II. The Five-Year NDOs Are Contrary to DOJ Policy.

DOJ policy requires prosecutors to seek § 2705(b) NDOs of one year or less, barring exceptional circumstances, and to provide case-specific and fact-intensive supporting evidence to facilitate judicial review of nondisclosure orders and renewals. *See* Monaco Memo, *supra* note 2, at 3–4 & nn.4, 5; Rosenstein Memo, *supra* note 1, at 1, 2 n.3; *Matter of Subpoena 2018R00776*, 947 F.3d at 152 (citing Rosenstein Memo at 2). The evidence provided must support a finding beyond a mere belief that disclosure *may* endanger the investigation or else seek a shorter 90-day NDO under § 2705(a). *See* Monaco Memo, *supra* note 2, at 2 n.2. And the NDO "should extend only as long as necessary to satisfy the government's interest." Rosenstein Memo, *supra* note 1, at 1.

In *In re Grand Jury Subpoena to Google, LLC*, the court sought additional information from the government on its application for a one-year NDO, reasoning the government had failed to provide sufficient information warranting its request for the "maximum duration consistent with its [NDO] policy." 2020 WL 3637379, at *4 (E.D.N.Y. June 19, 2020). The court found the government lacked a particularized justification for seeking "a year [NDO] rather than some shorter period that imposes less of a constraint on the Company's otherwise protected right to share information," such as the "the anticipated length of the remainder of the investigation to which the subpoena pertains, or whether the government anticipates that any events other than the arrest or trial of any remaining targets will obviate the need for continued secrecy." *Id.* Here, the five-year PRTT NDOs surpass even the maximum nondisclosure period permitted under DOJ policy. While that policy applies to § 2705(b) NDOs, the principles are the same. It is hard to believe the government provided a "particularized justification" in its *ex parte* applications to the Court that demonstrated a five-year NDO was necessary to protect its interest, and that a shorter

nondisclosure period compliant with DOJ policy would be ineffective, particularly in light of the two-year NDOs already in place.

Assuming arguendo, that the government's investigation warranted an exception to DOJ policy, even in national security investigations, courts have recognized that much shorter periods of nondisclosure, subject to renewal, are effective in protecting the government's compelling interest. *See, e.g., In re Sealed Case,* 77 F.4th at 831 (180-day NDO for January 6th investigation); *Matter of Search of Info. Associated With Specified E-Mail Accounts,* 468 F. Supp. 3d at 562 (one-year NDO for export control investigation). For instance, NDOs accompanying National Security Letters ("NSLs") have shorter nondisclosure periods and more regular judicial oversight than the five-year PRTT NDOs at issue here. NSLs allow the FBI to obtain information to protect against international terrorism or clandestine intelligence activities and to limit disclosure if it may result in "a danger to the national security of the United States, interference with a criminal, counterterrorism, or counterintelligence investigation, interference with diplomatic relations, or danger to the life or physical safety of any person." 18 U.S.C. § 2709(a), (b)(1), (c)(1). Congress passed the USA Freedom Act of 2015, which directed the Attorney General to implement procedures for review of NSL nondisclosure requirements "at appropriate intervals."[8] In response, the FBI amended its policy to require the nondisclosure provision of an NSL to terminate *at the earlier of* the closing of the investigation in which the NSL was issued or at the three-year anniversary of the initiation of the investigation, except where the FBI determines that one of the existing statutory standards for nondisclosure continues to be satisfied. *See* FBI, *Termination Procedures for National Security Letter Nondisclosure Requirement* (Nov. 24, 2015) https://www.fbi.gov/file-repository/nsl-ndp-procedures.pdf/view; *In re Three Nat'l Sec. Letters,*

---

[8] *See* USA Freedom Act of 2015, Pub. L. No. 114-23, 129 Stat. 268 (June 2, 2015).

35 F.4th 1181, 1185 (9th Cir. 2022) ("The FBI reviews a non-disclosure requirement once if the related NSL investigation ends before the three-year anniversary and twice if the investigation ends thereafter."). The net effect is that even NSLs have a significantly shorter nondisclosure requirement than the five-year PRTT NDOs at issue here.

### III. A Shorter NDO Is Appropriate Here Because Investigations into Members of Congress and Staff Warrant More Regular Judicial Scrutiny.

Finally, because the target of the investigation appears to be a senior congressional staffer, the five-year PRTT NDOs raise important separation of powers concerns that strongly counsel in favor of a shorter nondisclosure period, more detailed disclosures to the Court, and more regular judicial oversight of the government's requests. The grand jury subpoena and search warrant similarly raise separation of powers issues because Apple understands ███████████ held roles in multiple congressional offices during the period for which data was sought by the grand jury subpoena (Oct. 1, 2020 to Nov. 8, 2023), Ex. G, and the search warrant (Jan. 1, 2022 to May 7, 2024), Ex. H. *See* Ex. F, LegiStorm.

As DOJ has recognized in internal memos and in an Inspector General report, investigations into members of Congress and their staff "implicate significant privileges or constitutional considerations" that might "run afoul of the Speech and Debate Clause of Article I of the Constitution" and implicate Congress's power to conduct oversight of the executive branch and to legislate on important topics.[9] Because the target of the government's investigation appears

---

[9] U.S. Dep't of Just., *Policies and Procedures in Criminal Investigations Involving Members of Congress and Staff*, at 1, 2 n.2 (Nov. 7, 2023) (requiring consultation with DOJ's Public Integrity Section prior to seeking a § 3123(d) order); *cf.* U.S. Dep't of Just., Off. of Insp. Gen., *A Review of the Department of Justice's Issuance of Compulsory Process to Obtain Records of Members of Congress, Congressional Staffers, and Members of the News Media*, Report No. 25-010, at 3–4 (Dec. 10, 2024) (hereinafter "OIG Report") ("The Department's decision to compel the production of non-content communications records of members of Congress and congressional staffers implicated the constitutional rights and authorities of a co-equal branch of government" and "risk[ed] chilling Congress's ability to conduct oversight of the

to be a senior congressional staffer, the same risks of DOJ encroachment on Congress's constitutional powers are present here.

In the wake of public focus and attention on a high-profile investigation involving congressional staff and in anticipation of the Inspector General's report on the subject, DOJ preemptively announced a new policy in September 2024 requiring greater disclosures to the court in cases where an NDO issued pursuant to § 2705(b) would delay notice to a member of Congress or their staff. U.S. Dep't of Just., Justice Manual § 9-13.700. And in its December 2024 report, the Inspector General criticized DOJ's use of "boilerplate language" that failed to address case-specific information in applications seeking NDOs involving members of Congress and their staff, including non-content communication records, and the Inspector General recommended that DOJ "consider the circumstances in which NDO applications and renewals should identify for the reviewing judge that the records covered by a proposed NDO are records of Members of Congress or congressional staffers." OIG Report, *supra* note 9, at 44, 50.

Once again, Apple does not and cannot know whether the government disclosed the congressional staffer's identity to the Court as DOJ policy now requires and as reflected in the Inspector General's recommendations, and the government declined to advise Apple if these disclosures were made to the Court in connection with its prior applications for NDOs. However, because of the important Separation of Powers issues raised in the investigation, the Court should reduce the term of the NDOs here and require more regular and case-specific disclosures to the

executive branch because it exposes congressional officials to having their records reviewed by the Department solely for conducting Congress's constitutionally authorized oversight duties and creating, at a minimum, the appearance of inappropriate interference by the executive branch in legitimate oversight activity by the legislative branch.").

Court about the government's need for continued nondisclosure and curtailment of Apple's First Amendment right.

## CONCLUSION

For the reasons stated above, Apple respectfully requests the Court find that the five-year NDOs for the five PRTTs violate strict scrutiny because less restrictive means exist to protect the government's investigation. Further, Apple requests that the Court modify the NDOs to amend the period of nondisclosure for each order to end no later than one year from the date the order was issued, or that the Court align the nondisclosure period for the PRTT NDOs with the date of the nondisclosure period for the grand jury subpoena.

\* \* \*

Dated: March 7, 2025

Respectfully submitted,

Carter Burwell (VSB No. 88177)
DEBEVOISE & PLIMPTON LLP
801 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Phone: (202) 383-8000
Fax: (202) 383-8118
cburwell@debevoise.com

*Counsel for Apple Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on this 7th day of March, 2025, I served an electronic copy (PDF) of Memorandum of Points and Authorities in Support of Motion to Modify Nondisclosure Orders Issued Pursuant to 18 U.S.C. § 3123(d), by electronic mail to the following email addresses, in accordance with the agreement between Apple Inc. and the United States Attorney's Office for the Eastern District of Virginia to accept service by email: Gordon.Kromberg@usdoj.gov and Seth.Schlessinger@usdoj.gov.

Respectfully submitted,

Carter Burwell (VSB No. 88177)
DEBEVOISE & PLIMPTON LLP
801 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Phone: (202) 383-8000
Fax: (202) 383-8118
cburwell@debevoise.com

*Counsel for Apple Inc.*