# ATTACHMENT #10

*Redacted Dkt. No. 12*

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

**UNDER SEAL**

| | |
|---|---|
| IN RE: APPLICATION OF THE UNITED ) | |
| STATES OF AMERICA FOR ORDERS ) | Case No. 1:25-DM-003 |
| AUTHORIZING INSTALLATION AND ) | |
| USE OF PEN REGISTER/TRAP AND ) | |
| TRACE DEVICES ON EMAIL ACCOUNT ) | |

GOVERNMENT'S OPPOSITION TO APPLE'S
MOTION TO MODIFY NON-DISCLOSURE PROVISIONS

Apple moves the Court to modify, to last no longer than one year, the duration of the

non-disclosure provisions of pen register orders entered with respect to the account of one of

its customers.  In the alternative, Apple moves the Court to align the non-disclosure periods for

the pen register orders with the expiration of the non-disclosure period entered with respect to a

grand jury subpoena served for information about the same Apple customer.  Apple

Memorandum at 3.[1] In short, Apple claims that the non-disclosure provisions of the pen

register orders infringe upon its constitutional right to notify its customer that it suspects the

government to be investigating ▆.

The Court should deny Apple's motion, because the only information that the non-

disclosure provisions ("NDOs") of the pen register orders ("PRTTs") prohibit Apple from

disclosing is information that Apple possesses only because the government served those

PRTTs on it in the first place.  In the alternative, the Court should postpone consideration of

Apple's motion until November 9, 2025.  By that time, the investigation predicating the

subpoena and PRTTs may have become overt (or ended), so that any dispute over the duration

---

[1]  Unless it is extended by further order of the Court, the non-disclosure order for the
grand jury subpoena referenced by Apple is set to expire on November 8, 2025.

of the NDOs will be moot, and the NDOs from the PRTTs orders can be vacated without objection. Of course, if the investigation has not by that time yet become overt (or ended), Apple's arguments will be ripe for consideration at that time.

### Procedural Background

Apple asserts that, over the last 16 months, the United States served on Apple one grand jury subpoena, five PRTTs, and one search warrant, all relating to an account of the same Apple customer. The subpoena and the warrant each was accompanied by an order prohibiting Apple from notifying its customer of Apple's receipt of that legal process for two years; the PRTTs themselves prohibited Apple from notifying its customer of those orders for five years. Apple Exhibits A-E, G, H, and I.[2]

Absent further order of the Court, the non-disclosure restrictions on Apple expire as follows:

| Apple Exhibit | Process | Date of Order | Order Expires |
|---|---|---|---|
| Apple Exhibit G | subpoena | November 9, 2023 | November 8, 2025 |
| Apple Exhibit A | PRTT | December 15, 2023 | December 14, 2028 |
| Apple Exhibit B | PRTT | February 12, 2024 | February 11, 2029 |
| Apple Exhibit C | PRTT | April 10, 2024 | April 9, 2029 |
| Apple Exhibit I | warrant | May 7, 2024 | May 6, 2026 |
| Apple Exhibit D | PRTT | June 7, 2024 | June 6, 2029 |
| Apple Exhibit E | PRTT | August 6, 2024 | August 5, 2029 |

In sum, Apple knows that, over the last 16 months, judges of this Court found NDOs justified in this investigation seven separate times.[3] In Apple's view, the issuance of NDOs

---

[2] "Apple Exhibit __" refers to the exhibits filed by Apple in connection with the instant motion.

[3] "GX __" refers to exhibits filed by the United States in connection with our opposition to Apple's motion. GX A, B, C, D, E, G, and H are the pleadings that moved the Court for the NDOs filed as Apple Exhibits A, B, C, D, E, G, H and I. Because Apple has no right to know of the substance of the underlying investigation, these exhibits are provided to the Court on an *ex parte* basis.

for PRTTs for the same investigation in February, April, June, and August 2024, is irrelevant to its claim that its First Amendment right to notify its client of the investigative interest in ■ will be violated unless the United States separately justifies on an annual basis the NDO issued for the PRTTs entered between December 2023 and August 2024.  As explained below, that view is mistaken for many reasons.  As an initial matter, however, the Court should note that, just since September 2024, judges of this Court found NDOs justified in this same ongoing investigation at least *another* 16 times.

GX 1 through GX 16 are copies of NDOs (and the applications for such NDOs) relating to this same investigation, contained in subpoenas, search warrants, pen register orders, and a 2703(d) order, that were authorized by this Court, just between September 2024 and January 2025.[4]  These exhibits show that the investigation involving Apple's customer is both complex and active.[5]  Moreover, it shows that, to protect the integrity of the underlying investigation, and as recently as January 31, 2025, judges of this Court have repeatedly authorized continued non-disclosure. GX 16.  In short, Apple's argument that the United States should return to the Court more often to justify continued non-disclosure is undercut by the fact that judges of this Court have found NDOs for this investigation to be justified *16* times over just the last four months.[6]

---

[4]  Because Apple has no right to know of the substance of the underlying investigation, GX 1 through GX 16 are provided to the Court on an *ex parte* basis.

[5] Indeed, information is still being collected pursuant to the terms of the PRTT issued by Judge Vaala on January 31, 2025.  GX 16.

[6] Accordingly, acceptance of Apple's argument, and its application to this investigation would require the government to apply for the renewal on an annual basis of at least 23 NDOs, for as long as the investigation remains open but covert.  Such a practice would not further the Court's efforts "to manage its dockets and courtrooms with a view toward the efficient and expedient resolution of cases." *Dietz v. Bouldin*, 579 U.S. 40, 47 (2016).

3

From the voluminous filings that have been made in connection with the NDOs, this Court well knows of the circumstances of the underlying investigation in detail. *See, e.g.,* GX 9 (Judges Davis and Fitzpatrick); GX 14 (Judges Porter and Fitzpatrick).   Notwithstanding the scope of the detail contained in the affidavits in support of search warrants, *id.,* the levels of detail in the application for the 2703(d) order and the PRTT orders are extensive in their own right. *See, e.g.,* GX 4 (Judge Anderson); GX 16 (Judge Vaala).  Moreover, the extremely detailed facts of the underlying investigation contained in GX 14 were current as of December 30, 2024.

While Apple has no right to know of the substance of the underlying investigation, it already has from the process served on it significant information about that investigation.  For example, each of the PRTTs served on Apple reflect that government counsel certified to the Court that the information likely to be obtained by the orders would be relevant to an ongoing criminal investigation by the FBI into possible violations of 22 U.S.C. § 611, *et seq.,* by Apple's customer.  Apple Exhibits A, B, C, D, and E.  It obviously is a matter of public record that Section 611 of Title 22 of the United States Code is part of the Foreign Agents Registration Act.

Further, the warrant served on Apple disclosed that the investigation involved suspected false statements and conspiracy by Apple's customer, in violation of 18 U.S.C. §§ 371 and 1001, relating to communications concerning the Government of Qatar or travel to Qatar. Apple Exhibit H, at 5.  As a result, Apple knows that the underlying investigation involves false statements, a conspiracy, at least one unregistered foreign agent, and the Government of Qatar.  Accordingly - - and simply on the basis of facts known to Apple today - - the NDOs challenged by Apple manifestly involve a foreign government and a suspected foreign agent in

4

the United States. Moreover, the affidavit filed on December 31, 2024, contained in GX 14, sets forth additional offenses currently under investigation. Under these circumstances, the Court should exercise particular caution before considering whether the NDOs violate the First Amendment.

<u>The Law Providing for Non-Disclosure of PRTTs</u>

Service providers that receive PRTTs are prohibited by law from disclosing the existence of such orders to their subscribers (or any other person) unless or until otherwise ordered by the court. The PRTT law provides:

> An order authorizing or approving the installation and use of a pen register or a trap and trace device shall direct that—
>
> \*          \*          \*
>
> the person owning or leasing the line or other facility to which the pen register or a trap and trace device is attached or applied . . . not disclose the existence of the pen register or trap and trace device or the existence of the investigation to the listed subscriber, or to any other person, unless or until otherwise ordered by the court.

18 U.S.C. 3123(d)(2). In short, when Congress enacted the law to provide for PRTTs, it explicitly provided that, without a court order specifying otherwise, the service provider would be barred from disclosing the existence of the PRTT indefinitely.[7]

<u>Argument</u>

In its motion, Apple argues that the NDOs of the PRTTs violate the company's First Amendment right to communicate with its accountholder. The nub of Apple's argument is that the duration of the NDOs are not narrowly drawn enough to survive the "strict scrutiny" that

---

[7] In contrast, the law providing for NDOs for subpoenas, orders, and warrants served on internet service providers authorize a court to order non-disclosure only if the court makes certain findings regarding the risks incurred by disclosure. 18 U.S.C. § 2705(b). In that event, the court is authorized to bar disclosure "*for such period as the court deems appropriate.*" *Id.* (emphasis added). In contrast, Section 3123(d)(2) provides for *indefinite* non-disclosure of PRTTs, without any prior judicial findings regarding the risks of non-disclosure.

often applies to prior restraints on speech. Apple's argument fails for multiple reasons. The "strict scrutiny" standard should not apply here - - but even if it did, the terms of the NDOs would survive such scrutiny.

I.    The Government's Interest in Non-Disclosure is Compelling

"[P]rotecting the secrecy of an investigation is a paramount interest of the government." *Matter of Subpoena 2018R00776*, 947 F.3d 148, 156 (3d Cir. 2020) (an NDO issued under 18 U.S.C. § 2705 met the "strict scrutiny" test). Investigating criminal activity is a "core government function that secures the safety of people and property." *In re Sealed Case,* 77 F.4th 815, 830 (D.C. Cir. 2023) (same). Preserving the integrity and maintaining the secrecy of its ongoing criminal investigation "is a compelling government interest." *Id.* That interest is "particularly acute where, as here, the investigation is ongoing." *Id.* Breaching the investigation's confidentiality could open the door to evidence-tampering, witness intimidation, or other obstructive acts. *Id.*

In addition, the government's interest is heightened where an investigation has national security implications, for "no governmental interest is more compelling than the security of the Nation." *Haig v. Agee*, 453 U.S. 280, 307 (1981). Courts must provide the "utmost deference" to the factual judgments of the executive branch pertaining to national security matters. *Dep't of Navy v. Egan*, 484 U.S. 518, 529–30 (1988). Investigations involving the agents of a foreign

<<

<<

<<

<<

<<

6

power or its collaborators require the utmost stealth and secrecy. *United States v. Hung*, 629 F.2d 908, 913 (4th Cir. 1980).[8]

Here, five judges of this Court knew that this investigation involves (at least) one suspected foreign agent; all five specifically found that disclosure of the PRTTs challenged by Apple would jeopardize the criminal investigation, and all five also found that disclosure of other legal process in this investigation issued since September 2024 would jeopardize the investigation as well:

| Judge | Apple Exhibits | Government Exhibits |
|---|---|---|
| Judge Anderson | A | 4 |
| Judge Davis | D | 5, 6, 7, 8, 9, 10, 11, 12, 13 |
| Judge Fitzpatrick | B | 3 |
| Judge Porter | E | 1, 2, 14 |
| Judge Vaala | C | 15, 16 |

As this Court's review of the documents submitted *ex parte* will confirm, the government's exhibits contain sensitive nonpublic facts about the path of the government's investigation to date, the release of which could reveal the identities of possible targets and witnesses. The publication of such information could seriously jeopardize the ongoing investigation, including by giving targets an opportunity to flee or continue flight from prosecution, destroy or tamper with evidence, change patterns of behavior, or notify confederates. *See In re Sealed Case*, 77 F.4th at 830.

---

[8]  "The executive branch . . . is constantly aware of the nation's security needs and the magnitude of external threats posed by a panoply of foreign nations and organizations. On the other hand . . . the courts are unschooled in diplomacy and military affairs . . . . Few, if any, district courts would be truly competent to judge the importance of particular information to the security of the United States."

*Hung*, 629 F.2d at 913-14.

The national security concerns at issue in this investigation are set forth in all of the applications for non-disclosure, but particularly at length in GX 9, GX 10, and GX 14. Thus, the government's interest in non-disclosure is particularly strong here. In that light, and as explained below, the "strict scrutiny" test does not apply here - - but even if it did, the NDOs would still be valid.

II.    The "Strict Scrutiny" Test Does Not Apply to the NDOs Issued in This Investigation

Apple's claim that the "strict scrutiny" test applies to the NDOs it challenges is incorrect. By the reasoning of the Supreme Court, the "strict scrutiny" test does not apply to information that Apple obtained only because the government disclosed such information to Apple in the course of executing court orders. The "speech" that is restricted - - disclosure to Apple's customer that ▮ apparently is under criminal investigation - - is limited to information that Apple obtained only by virtue of its receipt of the PRTTs in the first place.

Government-imposed limitations on freedom of speech are subject to greater or lesser degrees of scrutiny depending upon contextual factors such as the type of speech involved. The most searching form of scrutiny, called "strict scrutiny," applies to the protection of speech implicating the core concerns of the First Amendment. *Republican Party of Minn. v. White,* 536 U.S. 765, 774 (2002) (applying the strict scrutiny test to a restriction on speech about the qualifications of candidates for public office). That is not the type of "speech" that is at issue here.

The information that Apple seeks relief from the NDO to disclose is *not* that it provided information about its customer to the FBI, but that it did so *in response to* legal process. By the same token, the information that the NDO acts to protect is not that Apple provided information

8

to the FBI, but that Apple did so *in response to* a PRTT.[9]  After all, Apple can at any time disclose to its customers that it provides (or has provided) information about their accounts to the FBI (but Apple does not want to *that*); instead, what the PRTTs bar Apple from disclosing is that it does so (or that it did so) *in response to* a PRTT.

Apple's desire to notify its customer that ▮ may be under criminal investigation has little in common with political speech or the free exercise of ideas described in *Republican Party of Minn.*; it does not approach the core concerns of the First Amendment.  In *John Doe,* the Second Circuit reasoned that, in contrast to more typical "prior restraints," NDOs do not restrict "those who customarily wish to exercise rights of free expression, such as speakers in public fora, distributors of literature, or exhibitors of movies." *Id.* at 876.

The *John Doe* court deemed an NDO "far more limited than the broad categories of information that have been at issue with respect to typical content-based restrictions." *Id.* Accordingly, an NDO "is not a typical prior restraint or a typical content-based restriction warranting the most rigorous First Amendment scrutiny." *John Doe, Inc. v. Mukasey,* 549 F.3d 861, 877 (2d Cir. 2008).  To be sure, Apple's desire to notify its customer of the government's investigation does not warrant the most rigorous First Amendment scrutiny.

In *Butterworth v. Smith,* 494 U.S. 624 (1990), the Supreme Court reasoned that, while a grand jury witness generally has a right under the First Amendment to disclose his own testimony, *id.* at 626, that right does not entitle him to disclose the testimony of *another* witness.

---

[9] The operative language of the PRTTs is:

> IT IS FURTHER ORDERED that the EMAIL SERVICE PROVIDER and it [sic] agents and employees shall not disclose the existence of the pen/trap device or the existence of the investigation to any person, except as necessary to effectuate this Order, for five years unless otherwise ordered by the Court.

*See* Apple Exhibits A, B, C, D, E.

9

*Id.* at 633. Concurring, Justice Scalia distinguished the constitutional protection of what grand jury witnesses know beforehand (which they are entitled by the First Amendment to disclose as they see fit), from what they learn only by virtue of being made a witness (which the First Amendment does not entitle them to disclose):

> Quite a different question is presented, however, by a witness's disclosure of the grand jury proceedings, which is knowledge he acquires not 'on his own' but only by virtue of being made a witness.

*Id.* at 636. As in *Butterworth,* the knowledge affected by the non-disclosure orders here affect information that Apple acquired only "by virtue of being made a witness." Were the PRTTs not served on Apple, Apple would not have known that its customer was under investigation. As Justice Scalia explained, such information, acquired from the government solely "by virtue of being made a witness," is entitled to less protection than information a speaker possesses independently of his contact with the government.

The Supreme Court used the same reasoning in the context of a challenge to a protective order barring a litigant from disclosing information that the litigant obtained through pre-trial discovery. In *Seattle Times v. Rhinehart,* 467 U.S. 20 (1984), the Supreme Court held that an order "prohibiting dissemination of discovered information before trial is not the kind of classic prior restraint that requires exacting First Amendment scrutiny." *Id.* at 33. Because the information did not arise from "a traditionally public source of information," it "[did] not raise the specter of government censorship." *Id.* at 32-33.

In *Seattle Times,* the Supreme Court explained that restrictions on the dissemination of information obtained under a protective order "take into account the unique position" that such orders occupy in relation to the First Amendment:

> As in this case, such a protective order prevents a party from disseminating only that information obtained through use of the discovery process. Thus, the party may disseminate the identical information covered by the protective order as long as the information is gained through means independent of the court's processes. In sum, *judicial limitations on a party's ability to disseminate information discovered in advance of trial implicates the First Amendment rights of the restricted party to a far lesser extent than would restraints on dissemination of information in a different context.*

*Id.* at 37 (emphasis added).

In *First Amendment Coal. v. Judicial Inquiry & Review*, 784 F.2d 467 (3d Cir. 1986), the Third Circuit used the same reasoning. Because a "litigant has no First Amendment right to publish information made available only for purposes of trying his suit," a confidentiality requirement can prevent witnesses from disclosing proceedings, with the exception of their own testimony. *Id.* at 478.

In *In re Sealed Case*, 77 F.4th 815 (D.C. Cir. 2023), the D.C. Circuit used similar reasoning in upholding an NDO, without deciding whether the "strict scrutiny" test applied. Citing *Butterworth* and *Seattle Times,* the D.C. Circuit reasoned that the "more analogous Supreme Court cases are those in which the Court upheld confidentiality requirements with respect to information obtained in connection with court processes." *Id.* at 829-30 n.5.

NDOs should be analyzed the same way as the restrictions on the disclosure of grand jury information, for in both circumstances, the restrictions apply to information that is obtained only by reason of being a witness. Similarly, NDOs should be analyzed in the same way as the restrictions on the disclosure of information covered by a protective order, for in both circumstances, the restrictions apply to information that is obtained only by reason of participation in a court process.

11

Like grand jury materials, and like materials covered by a protective order, the "speech" restricted by the non-disclosure provisions challenged by Apple (the notification that Apple desires to make to notify its customer of the existence of the government's investigation) is limited to information that Apple obtained only by virtue of its involvement in the government's investigation. It is analogous to information that a witness learns through a grand jury appearance, or that a litigant obtains through pre-trial discovery - - but "strict scrutiny" does not apply to limitations on the disclosure of such information. *Butterworth*, 494 U.S. at 636; *Seattle Times*, 467 U.S. at 37.

Put another way, a less stringent level of scrutiny should be applied to NDOs, which – like grand jury information and like information learned in discovery and covered by a protective order – apply only to new material conveyed contemporaneously with the restriction on further dissemination, and thus have no functional impact on Apple's speech rights. Apple cannot persuasively claim that its right to speech is significantly burdened by a restriction on further dissemination of information that it could not possibly have disseminated before it received the NDO in the first place. By the reasoning of the Supreme Court in *Butterworth* and in *Seattle Times;* of the Second Circuit in *John Doe;* the Third Circuit in *First Amendment Coal;* and of the Eleventh Circuit in *Henry;* the "strict scrutiny" test should not apply to the restraints on speech imposed by the NDOs issued in this investigation, and they pass constitutional muster.

Based on *Butterworth,* the Eleventh Circuit concluded that the "strict scrutiny" test did not apply to a prohibition on a witness's disclosure of grand jury information that he learned only by virtue of being made a witness. *Henry v. Attorney General, Alabama,* 45 F.4th 1272 (11th Cir. 2022). The *Henry* court noted that *Butterworth* put the burden on the witness to show

that his First Amendment free speech rights outweighed the state's interests. *Id.* at 1276. As

the Eleventh Circuit reasoned:

> We apply the balancing test—and not strict scrutiny—
> because *Butterworth* didn't require that the state's grand jury
> secrecy law had to be narrowly tailored to serve a compelling state
> interest, which is inconsistent with applying strict
> scrutiny. *See Doe v. Bell*, 969 F.3d 883, 888 n.6 (8th Cir.
> 2020) (noting that *Butterworth* "did not apply strict scrutiny when
> evaluating a state secrecy requirement concerning the testimony of
> grand jury witnesses"). And we apply the balancing test—and not
> strict scrutiny—*because Butterworth put the burden on the witness*
> *to show that his First Amendment free speech rights outweighed*
> *the state's interests*, which is also inconsistent with applying strict
> scrutiny.

*Id.* at 1276 (emphasis added). As *Henry* explains, *Butterworth* puts the burden on Apple to

show that its interest in notifying its customer of the criminal investigation outweighs the

government's interest in preserving the secrecy of that investigation - - and that, Apple cannot

do.

III.    The NDOs Are Valid Even Under the "Strict Scrutiny" Test

In light of the government's compelling interest in protecting the integrity of this

investigation, the NDOs issued in this investigation do not violate Apple's First Amendment

rights even if the "strict scrutiny" test were to apply. For example, in *Twitter v. Garland*, 61

F.4th 686 (9th Cir. 2023), after applying the "strict scrutiny" test, the Ninth Circuit upheld a 10-

year prohibition on the disclosure by Twitter of the number of national security letters Twitter

received. Relying on *Butterworth* and *Seattle Times*, the Ninth Circuit reasoned that Twitter

was "restrained only in speaking about information it received from the government." *Garland*,

61 F.4th at 707. In concurrence, Judge VanDyke explained:

> [S]imilar to the confidentiality requirements at issue in *Butterworth* and
> *Seattle Times*, the Government's restrictions only prevent "the disclosure
> of ... specific piece[s] of information ... generated by the government: the

fact that the government has requested information to assist in an investigation addressing sensitive national security concerns."

*Id.* at 717. *See also In re National Security Letter*, 33 F.4th 1058 (9th Cir. 2022) (relying on *Butterworth* and *Seattle Times* to uphold the NDO provision of national security letters). *Twitter* and *In re National Security Letter* also are noteworthy because the NDOs at issue in those cases were issued pursuant to 18 U.S.C. 2709(c) - - and pursuant to that section, they were not initially authorized or directed by a judge, but simply by the FBI pursuant to its counterintelligence authorities. If an NDO with a duration of 10 years is constitutional even without any judicial involvement in its issuance, surely an NDO with a duration of five years issued by a judge is constitutional as well.

A similar result was reached in *Matter of Subpoena 2018R00776*, 947 F. 3d 148 (3d Cir. 2020) (but the NDO under consideration there was only for one year). There, the Third Circuit applied that same reasoning to uphold under the "strict scrutiny" test an NDO issued pursuant to 18 U.S.C. § 2705.

The Third Circuit wrote:

> Courts consistently distinguish between disclosure of information that a witness has independent of his participation in grand jury proceedings and information the witness learns as a result of his participation. This approach strikes a "balance" between First Amendment rights and the government's "interests in preserving the confidentiality of its grand jury proceedings." Here, the NDOs prohibit ABC Corp. only from speaking about the existence of the government's requests—information it learned of by its participation as a grand jury witness. The NDOs do not prohibit ABC Corp. from discussing the government's requests abstractly, as service providers have done by disclosing the number of data requests and NDOs they receive in public docket civil complaints. This can hardly be described as a "total ban" on speech. *The NDOs only proscribe speech that would reveal the existence of this particular grand jury investigation* to a non-participant, a measure narrowly tailored to preserve the secrecy of this grand jury proceeding.

14

*Id.* at 157-58 (emphasis added). *Accord In re Sealed Case*, 77 F.4ᵗʰ 815 (D.C. Cir. 2023) (upholding an NDO whether or not the "strict scrutiny" test applied).

### A.    The NDOs Are Narrowly Tailored

Regardless of whether "strict scrutiny" standard applies, the NDOs are narrowly tailored. First, they do not prevent Apple from notifying its customer that it has provided information to the FBI; as noted above, what is prohibited is notifying its customer that it has provided information to the FBI in response to a PRTT. Second, the NDOs do not prevent Apple from publicizing its receipt of PRTTs, so long as the name of the account and/or the accountholder is not included in the dissemination. Third, with the same limitations, the NDOs do not bar Apple from publicizing the cost of compliance with PRTTs; the burden on its employees created by the PRTT; or the volume of subpoenas, PRTTs, and search warrants that it receives.

Fourth, the NDOs do not prevent Apple from warning its accountholders generally that the information stored in Apple accounts is subject to capture by law enforcement authorities; that the FBI obtains PRTTs for Apple accounts; or its accountholders might suffer ramifications from the existence of such PRTTs. Fifth, without inclusion of the details of the individual accountholders involved, the NDOs do not prevent Apple from using its receipt of these orders to support public challenges to the government's use of PRTTs registers that include NDOs, to support lobbying efforts to prevent the government from accessing its data; or, indeed, to support its position on any public policy issue related to PRTTs or NDOs.

Sixth, the NDOs do not prevent Apple from disparaging the FBI's attempts to enforce laws against foreign agents; from encouraging warm relations with Qatar; or complaining generally about the privacy issues raised by NDOs - - so long as Apple does not notify anyone

15

of the specific customers or accounts that are the subjects of the orders. In sum, the *only* information the NDOs prevent Apple from broadcasting in any way Apple sees fit is disclosing to its customer (or anyone else) the particular account subject to the NDOs.

Finally, even though Section 3123 does not place any time limit on the duration of NDOs issued pursuant to that section, the NDOs served on Apple are of a finite duration. In contrast, the prohibitions in *Butterworth, Seattle Times, Henry,* and *First Amendment Coal* were upheld even though they were of indefinite duration. Moreover, the ten-year duration of the NDOs were upheld in *Twitter v. Garland*[10] and *John Doe* - - and unlike the NDOs challenged by Apple - - the NDOs upheld in those cases were never issued by a court in the first place. In light of the reasoning set forth in those opinions, the five-year duration of the NDOs for the PRTT orders served on Apple cannot be deemed to violate Apple's First Amendment rights. So long as the duration of an NDO is not indefinite, there cannot be a serious argument that a one or a two-year duration for an NDO meets constitutional muster, but a five-year duration does not. Even under a "strict scrutiny" standard, the appropriate restriction "must be narrowly tailored, not 'perfectly tailored.'" *In re Sealed Case,* 77 F.4th at 830-31.

B.    DOJ Policy Is Not a Basis to Find the NDOs Unconstitutional

Apple suggests that the non-disclosure orders issued in this investigation were sought in violation of DOJ policy. "Government policy statements, unless mandated by the Constitution or statute, do not confer any rights or privileges on an individual defendant." *United States v. Bare,* 692 Fed.Appx. 105, 106 (4th Cir. 2017). In any event, this investigation (including the

---

[10] The NDO requirement for the national security letters ("NSLs") were required to terminate when the underlying investigation is closed or on the three-year anniversary of the initiation of the investigation (unless the FBI makes a determination that one of the existing statutory standards for nondisclosure is satisfied). *In re National Security Letter,* 33 F.4th at 1057.

16

application for PRTTs) has been subject to extensive oversight by officials at various components of the headquarters of the U.S. Department of Justice.

We take seriously the obligation to limit the unnecessary duration of non-disclosure orders, and do not always seek an order of as long a duration as possible. *See, e.g.,* GX 17 (an NDO with a duration of one year, served on Apple from an investigation unrelated to one at issue here).[11]

The bulk of the national security investigations in which undersigned counsel is involved last for years, and their duration often is a function of the tradecraft used by the targets as much as the international aspects of such investigations. While others may move investigations faster, undersigned counsel's docket today has seven investigations for offenses involving national security that have been outstanding for between four and 12 years, but still are in a covert stage; six have been outstanding for more than five years. In the last year, non-disclosure orders for new legal process have been issued for two of those investigations, and existing non-disclosure orders have been renewed for a third investigation.

In short, national security investigations in the portfolio of undersigned counsel often take more than five years to resolve. Investigations for the crimes identified in the NDOs served on Apple often are complicated, and take time to prepare. The statute of limitations within which such crimes must be prosecuted is generally five years.[12] Under those circumstances, a non-disclosure provision that lasts for five years is valid even under a "strict

---

[11] Inasmuch as the subpoena and NDO contained in GX 17 were previously served on Apple, GX 17 will be provided under seal to Apple with this pleading (as well as a redacted version of the application for the NDO).

[12] Sometimes, for crimes that are closely related, the statute of limitations is 10 years. *See, e.g.,* 18 U.S.C. § 793.

17

scrutiny" test. *See, e.g., Twitter, Inc.,* 61 F.4th 686 (10-year prohibition on disclosure of the number of national security letters received survives strict scrutiny).

### C. Bars on Indefinite Disclosure Are Routinely Used without Challenge

The bar on disclosure of indefinite duration found in Section 3123(d)(2) is analogous to the bars of indefinite duration found in the protective orders routinely issued by this Court. Similarly, it is analogous to the bar of indefinite duration, found in Federal Rule of Criminal Procedure 6(e), that is routinely applicable against the disclosure of grand jury information.

Further, the bar on disclosure of indefinite duration found in Section 3123(d)(2) is directly analogous to the bar of indefinite duration, found in 12 U.S.C. § 3420(b), that is routinely used in grand jury investigations of bank fraud or money laundering offenses, to prohibit financial institutions from disclosing to their customers the receipt by such institutions of grand jury subpoenas seeking information about those customers - - except that no court is involved in issuing the NDOs for the grand jury subpoenas covered by Section 3420(b).

Finally, the bar on disclosure of indefinite duration found in Section 3123(d)(2) is directly analogous to the bar of indefinite duration, found in 18 U.S.C. § 1510(b)(2), that bars officers of financial institutions from notifying their customers of the existence of grand jury subpoenas for the customers' account information. Just as with the NDOs covered by Section 3420(b), no court is involved in issuing the NDOs for the grand jury subpoenas covered by Section 1510(b)(2). Grand jury subpoenas routinely served in connection with investigations conducted by the United States Attorney's Office remind the recipient financial institutions of the legal prohibitions codified at Sections 3420(b)

and 1510(b)(2), against the disclosure to the accountholders of the existence of the subpoenas. GX 18, at Attachment B.[13]

We are unaware of any court that has ruled that the prohibitions enacted by Congress to bar banks from notifying customers of the government's investigative interest in the accounts of those customers violate the First Amendment rights of the banks or their customers, even though such prohibitions are of indefinite duration. Accordingly, any finding that an NDO of a duration of five years served on an internet service provider somehow violates the First Amendment, may well undermine the enforceability of the non-disclosure provisions of the grand jury subpoenas served on financial institutions pursuant to Sections 1510(b)(2) and 3420(b).

## Conclusion

The NDOs issued in this investigation further a compelling government interest to protect an ongoing investigation involving a foreign government and its agents in the United States. Where Apple knows that the FBI is interested in its customer only because Apple was served with court orders to enable the FBI to obtain information from the customer's account, the "strict scrutiny" test does not apply to the court orders that bar Apple from notifying its customer of the FBI's interest. Even if the "strict scrutiny" test did apply, however, the need of the government to protect the nature of this national security investigation, involving a foreign country and its collaborators in the United States, satisfies that test.

In light of these principles, the Court should deny Apple's motion. In the alternative, the Court should continue the matter until November 2024, when the first NDO challenged by

---

[13] The three subpoenas comprising GX 18 were issued in connection with the same investigation as were issued the PRTTs challenged by Apple. Because Apple has no right to know who was subpoenaed for what, these three subpoenas are filed with this pleading *ex parte.*

19

Apple is set to expire. In November 2024, the dispute over the duration of the NDOs for the earliest PRTT will be ripe - - unless, as is possible, it will by then be mooted by intervening events.

Respectfully submitted,

Erik S. Siebert
United States Attorney

By: *Gordon D. Kromberg*
Gordon D. Kromberg
Assistant United States Attorney
Virginia Bar No. 33676
Attorney for the United States
2100 Jamieson Avenue
Alexandria, VA 22314
(703) 299-3700
(703) 837.8242 (fax)
gordon.kromberg@usdoj.gov

20

<u>Certificate of Service</u>

I hereby certify that on March 21, 2025, I transmitted the foregoing GOVERNMENT'S

RESPONSE IN RESPONSE TO APPLE'S MOTION TO MODIFY NON-DISCLOSURE

PROVISIONS (without any Government Exhibit but GX 17) by email to below listed counsel

of record:

Carter Burwell at cburwell@debevoise.com
Valerie Zuckerman at vazuckerman@debevoise.com
Erez Liebermann at eliebermann@debevoise.com
Connor Crowley at crcrowley@debevoise.com

*Gordon D. Kromberg*

Gordon D. Kromberg
Assistant United States Attorney

21